| | | |
|---|---|---|
| ARTHUR JAY GOULETTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | **ORDER** |
| | ) | |
| MARTA M. KALINSKI , | ) | |
| BENJAMIN M. ANDERSON, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on a motion to dismiss, (Doc. No. 30), filed by

Defendant Marta M. Kalinski, M.D., pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure. Defendant is represented by Elizabeth McCullough and Madeleine Pfefferle of Young,

Moore and Henderson, P.A.

## I.       PROCEDURAL BACKGROUND

Pro se Plaintiff Arthur Jay Goulette is a North Carolina prisoner incarcerated at Alexander

Correctional Institution in Taylorsville, North Carolina. Plaintiff filed this action on March 16,

2018, pursuant to 42 U.S.C. § 1983, naming as Defendants (1) Marta Kalinski, a doctor at

Alexander at all relevant times ("Dr. Kalinski"); and (2) Benjamin M. Anderson, the Assistant

Superintendent for Programs II at Alexander at all relevant times. Plaintiff amended his Complaint

on May 24, 2018. (Doc. No. 12). Plaintiff brought this action attempting to allege claims for

deliberate indifference to a serious medical need, medical malpractice, retaliation, and conspiracy

against Dr. Kalinski relating to medical care she provided to him while he was incarcerated at

Alexander Correctional Institution ("Alexander") from May 2016 through May 24, 2018. (Doc.

No. 12). Plaintiff requests compensatory damages, punitive damages, and injunctive relief in the form of occupational therapy, physical therapy, surgeries on his neck, back, and legs, treatment for chronic migraines, and to be housed at Central Prison in the medical unit. (Id.).

On August 2, 2018, the Court conducted a frivolity review and allowed Plaintiff's deliberate indifference claim to proceed. (Doc. No. 15). Dr. Kalinski has now filed the pending motion to dismiss under Rule 12(b)(6). On December 18, 2018, this Court entered an order giving Plaintiff notice of his right to respond to the motion to dismiss. (Doc. No. 33). Plaintiff filed his response to the motion to dismiss, Defendant filed a Reply, and this matter is ripe for disposition. (Doc. Nos. 36, 37).

## II.    FACTUAL ALLEGATIONS[1]

Plaintiff was transferred from Central Prison in Raleigh, North Carolina, to Alexander Correctional Institution ("Alexander") on May 6, 2016. (Doc. No. 12-1 at 1). While incarcerated at Central Prison, Plaintiff was receiving medical treatment for migraines and neck, back, and hand injuries. (Id.). Regarding his hand, Plaintiff was being provided occupational therapy to determine whether he would benefit from surgical intervention. (Id.). Once transferred to Alexander, Dr. Kalinski decreased and discontinued the orders entered by the Central Prison doctors. (Id.). Specifically, Dr. Kalinski discontinued an order for an MRI and occupational therapy. (Id.).

On December 4, 2016, Plaintiff sustained injuries to his neck, back, pelvis, hips, and right hand when he fell due to water from a pipe burst. (Id.). The following day, Plaintiff was seen by a nurse in an emergency encounter during which the nurse reported to a physician assistant that Plaintiff should have been taken to the hospital the previous day. (Id. at 1-2). The physician assistant instructed the nurse that Plaintiff would need to be seen by Dr. Kalinski before he could

---

[1] Because the Court must accept the Plaintiff's factual allegations as true for purposes of this motion, the factual recitation herein is taken from Plaintiff's Complaint.

be taken to the hospital. (<u>Id.</u> at 2). Plaintiff, however, was not seen by Dr. Kalinski and was not taken to the hospital despite submitting sick calls regarding his alleged injuries and allegedly being referred to Dr. Kalinski from those sick calls. (<u>Id.</u>). Plaintiff does not allege, however, that Dr. Kalinski was aware of the sick calls or that she refused to treat Plaintiff.

Plaintiff fell on January 22, 2017, due to a faulty sink in his cell. (<u>Id.</u> at 3). Plaintiff was knocked unconscious and taken to Catawba Valley Medical Center Hospital, where he was treated by Dr. Jon A. Giometti. (<u>Id.</u>). Dr. Giometti referred him back to his primary care provider within the North Carolina Department of Public Safety ("NCDPS"). (<u>Id.</u>). Upon his return from the hospital, Plaintiff was not reevaluated in connection with the injuries he sustained. (<u>Id.</u>). On September 22, 2017, Plaintiff's physical therapist informed him that an MRI performed on his cervical spine in February revealed that he had fractures in his neck. (<u>Id.</u> at 4). Plaintiff alleges that Defendants displayed blatant disregard by not informing him of the results of that MRI. (<u>Id.</u>).

Throughout his Amended Complaint, Plaintiff alleges that Dr. Kalinski discontinued and decreased treatment for his chronic pain and injuries. Specifically, Dr. Kalinski decreased his pain medications on January 19, 2017. (<u>Id.</u> at 3). Dr. Kalinski discontinued his occupational therapy on June 27, 2017, which had been previously approved by the Utilization Review Board and prescribed by his Central Prison doctors. (<u>Id.</u>). Dr. Kalinski again discontinued his occupational therapy in January 2018. (<u>Id.</u> at 4). Defendants decreased and discontinued his prescription for Tramadol. (<u>Id.</u> at 5).

Plaintiff also alleges that appointments scheduled with Dr. Kalinski had to be rescheduled due to emergencies on six occasions. (<u>Id.</u> at 4). As a result of the alleged delay in treatment, Plaintiff has permanent injuries, including nerve damage, partial paralysis, prolonged neck and back pain, dizziness, recurring chronic migraines, difficulty multitasking, narrowing disc in his

lower back, sciatica, pain and spasms in his back, and pain in his legs. (Id.). Additionally, Plaintiff was assaulted twice as a result of Dr. Kalinski failing to put him in a medical housing unit and told that he was faking his injury. (Id. at 5-6).

Based on the above factual allegations, Plaintiff purports to bring a claim against Dr. Kalinski for deliberate indifference to serious medical needs under the Eighth Amendment to the U.S. Constitution. Plaintiff also purports to be bringing a state law claim for medical malpractice. Plaintiff further alleges that Dr. Kalinski retaliated against him in delaying his treatment because he has a lawsuit pending against NCDPS. (Doc. No. 12 at 4). Finally, Plaintiff also purports to bring a conspiracy claim against Dr. Kalinski by alleging that, on January 19, 2017, Dr. Kalinski decreased his pain medications in conspiracy with Defendant Anderson and other medical and custody staff. (Id.). Plaintiff also alleges he fell on December 4, 2016, due to a busted pipe and on January 22, 2017, due to a faulty sink in his cell. (Id. at 1-3). Plaintiff alleges that Defendants were conspiring to avoid fixing the sink, thus causing his falls. (Id. at 3).

III.     STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim, the Court must accept the factual allegations of the claim as true and construe them in the light most favorable to the non-moving party. Coleman v. Maryland Ct. of Appeals, 626 F.3d 187, 189 (4th Cir. 2010). To survive the motion, the "complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To be "plausible on its face," a plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Id. A plaintiff therefore must "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling [it] to relief, i.e., the 'plausibility of entitlement to relief.'" Francis v. Giacomelli,

588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. 662 at 678).

## IV.   DISCUSSION

### A.   Deliberate Indifference to Serious Medical Needs

Plaintiff first purports to bring claims against Dr. Kalinski for deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights.  To state a claim for deliberate indifference in violation of the Eighth Amendment, an inmate must establish two requirements: (1) a sufficiently serious deprivation occurred, resulting "in the denial of the minimal civilized measure of life's necessities," and (2) the prison official had a sufficiently culpable state of mind. Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal quotation marks omitted).  In the medical context, an inmate "must demonstrate that the officers acted with 'deliberate indifference' (subjective) to the inmate's 'serious medical needs' (objective)." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).

As to the objective prong, a "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Iko, 535 F.3d at 241 (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)).  With regard to the subjective prong, a prison official is deliberately indifferent if he has actual knowledge of and disregards "the risk posed by the serious medical needs of the inmate."  Iko, 535 F.3d at 241 (citing Farmer, 511 U.S. at 837); see also Makdessi v. Fields, No. 13-7606, 2015 WL 1062747, at *9 (4th Cir. Mar. 12, 2015) (holding that the subjective prong "may be proven by circumstantial evidence that a risk was so obvious that it had to have been known").  To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.

Furthermore, not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle, 429 U.S. at 105. To establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), overruled in part on other grounds by Farmer, 511 U.S. at 837. Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983. See Estelle, 429 U.S. at 106. Moreover, while the Constitution requires a prison to provide inmates with medical care, a prisoner is not entitled to receive the treatment of his choice. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). A prisoner's difference of opinion over matters of expert medical judgment or a course of medical treatment do not rise to the level of a constitutional violation. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

Here, taking Plaintiff's allegations as true and construing all inferences in his favor, the Court finds that he has stated a claim sufficient to withstand a motion to dismiss as to his claim against Dr. Kalinski in her individual capacity for deliberate indifference to serious medical needs. Plaintiff alleges in the Amended Complaint, among other things, that Dr. Kalinski discontinued and decreased treatment prescribed by his doctors and Central Prison, including his Tramadol prescription. See (Doc. No. 12-1). He also alleges that Dr. Kalinski discontinued an order for an MRI, decreased his pain medications, and discontinued occupational therapy. Regarding Plaintiff's two alleged falls and associated injuries, Plaintiff further alleges Dr. Kalinski refused to treat him, despite sick call requests and referrals to the provider in connection with Plaintiff's December 4, 2016 fall. Furthermore, regarding Plaintiff's alleged fall on January 22, 2017, Plaintiff alleges that Dr. Kalinski refused to "examine, reexamine or revaluate" him upon returning to Alexander from Catawba Valley Medical Center. (Id. at 3). Although it is true that Plaintiff is

not entitled to unqualified access to health care and treatment may be limited to what is medically necessary and not what he would prefer, his allegations are simply enough to meet the plausibility standard under Iqbal and Twombly.[2]

Next, to the extent that Plaintiff has sued Dr. Kalinksi in her official capacity, she is entitled to Eleventh Amendment immunity from damages. Will v. Michigan Dep't of State Police, 491 U.S. 58, 66 (1989); Biggs v. Meadows, 66 F.3d 56, 61 (4th Cir. 1995). Furthermore, to the extent that Plaintiff seeks punitive damages, he is not entitled to punitive damages because he has not alleged that Dr. Kalinski acted with malice or with willful intent to deprive Plaintiff of his constitutional rights. Bennett v. Reed, 534 F. Supp. 83, 87 (E.D.N.C. 1981), aff'd, 676 F.2d 690 (4th Cir. 1982). Finally, although Defendant argues for dismissal of Plaintiff's request for injunctive relief, the Court will deny the motion to dismiss as to this claim. When Defendant filed the motion to dismiss, Plaintiff had been transferred away from Alexander. Plaintiff has been transferred back to Alexander during the pendency of this action. Therefore, at this stage in the proceedings, the Court declines to dismiss Plaintiff's claims for injunctive relief.

---

[2] Certainly, following discovery, and on summary judgment, Dr. Kalinski may submit an affidavit to refute all of Plaintiff's allegations. On a motion to dismiss under Rule 12(b)(6), however, a plaintiff's burden is simply not as high as Defendant assumes in her motion to dismiss. For instance, Defendant argues in her brief that "regarding Plaintiff's alleged fall on January 22, 2017, Plaintiff makes a conclusory allegation that Dr. Kalinski refused to 'examine, reexamine or revaluate' him upon returning to Alexander from Catawba Valley Medical Center. However, Plaintiff offers no factual support for his allegation." (Doc. No. 31 at 11 (citations omitted) (emphasis added)). Contrary to Defendant's argument, Plaintiff's allegation that "Dr. Kalinski refused to examine, reexamine, or reevaluate Plaintiff after his fall in January 2017" is a factual allegation. In other words, according to Plaintiff, Dr. Kalinski refused to treat him after a fall in September 2017. On summary judgment, Defendant may certainly dispute or explain this factual allegation. On a motion to dismiss, however, this Court must take this allegation as true and construe all inferences in Plaintiff's favor. See, e.g., Roudabush v. Milano, 714 Fed. Appx. 208 (4th Cir. 2017) (in prisoner Section 1983 case, reversing district court's grant of Rule 12(b)(6) motion to dismiss and remanding to district court); Martin v. Duffy, 858 F.3d 239 (4th Cir. 2017) (same); King v. Rubenstein, 825 F.3d 206 (4th Cir. 2016) (same); Smith v. Smith, 589 F.3d 736 (4th Cir. 2009) (same).

### B.     Medical Malpractice

As to Plaintiff's state law claim of medical negligence against Dr. Kalinski, Plaintiff failed to comply with North Carolina's legal requirements for pursuing a medical malpractice claim. Rule 9(j) of the North Carolina Rules of Civil Procedure requires plaintiffs asserting medical malpractice actions to obtain an expert review of "the medical care and all medical records" before filing a lawsuit, and for a medical expert to certify that.  N.C. GEN. STAT. § 1A-1, Rule 9(j). Plaintiff failed to include a Rule 9(j) expert witness certification as to his medical malpractice allegations, nor did he file a motion to qualify any reviewing expert "with the complaint," as required by Rule 9(j)(2), nor did he mention the common law doctrine of res ipsa loquitur doctrine or allege any facts giving rise to application of that doctrine.  In sum, because Plaintiff failed to comply with Rule 9(j), Plaintiff's state law medical negligence claim must be dismissed.[3]  Estate of Williams-Moore v. Alliance One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 649 (M.D.N.C. 2004) (failure to comply with Rule 9(j) is grounds for dismissal of a state medical malpractice claim filed in federal court); Frazier v. Angel Med. Ctr., 308 F. Supp. 2d 671, 676-77 (W.D.N.C. 2004) (same).

### C.     Retaliation

Plaintiff also purports to bring a retaliation claim against Defendant Kalinski.  To state a valid claim for retaliation under 42 U.S.C. § 1983, "a prisoner must allege: (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation."  Moore v. Bennett, No. 5:03-ct-762, 2011 WL 1102514, at *12 (E.D.N.C. Mar. 23, 2011) (quoting Jones v. Greninger, 188 F.3d 322,

---

[3]  The Court notes that, although Defendant Anderson has not joined in the motion to dismiss, the dismissal of Plaintiff's medical malpractice claim necessarily applies to Anderson as well because Plaintiff has not provided a Rule 9(j) certification as to any of the named Defendants.

324-25 (5th Cir. 1999)).  "For an inmate to state a colorable claim of retaliation, the alleged retaliatory action must have been taken with regard to the exercise of some constitutionally protected right, or the retaliatory actions itself must violate such a right."  Corbett v. Keller, No. 5:10-ct-3185, 2012 WL 461432, at *8 (E.D.N.C. Feb. 13, 2012).  When an inmate is alleging an official is retaliating against his exercise of his First Amendment rights, he "must establish that [the] conduct complained of adversely affected his constitutional rights" and "allege specific facts supporting the claim of retaliation[.]"  Id.

To state a claim for retaliation sufficient to withstand a motion to dismiss, a plaintiff "must present more than naked allegations of reprisal."  Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). "To hold otherwise would be to bring virtually every unpopular decision by state actors within the scope of a cause of action for retaliation."  Id.  Indeed, "every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct."  Id. Thus, retaliation claims must "be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions."  Id. (internal punctuation omitted).

Plaintiff's Amended Complaint fails to satisfy the requirements to state a valid claim for retaliation as to Dr. Kalinski.  Plaintiff states he is bringing this action due to alleged violations of his First Amendment right.  (Doc. No. 12 at 3).  Plaintiff alleges Dr. Kalinski retaliated against him because he has a lawsuit pending against NCDPS.  (Id. at 4).  Plaintiff fails to allege, however, that Dr. Kalinski's alleged inadequate treatment of him was motivated by Plaintiff's exercise of his First Amendment rights, that Dr. Kalinski knew about the suit at that time of her treatment of him, or that Dr. Kalinski's action itself violated Plaintiff's First Amendment rights.  Moreover, the pending litigation that is the basis of Plaintiff's retaliation claim pertains to NCDPS, not Dr. Kalinski.  See (Doc. No. 12 at 3-4).  Plaintiff's bare assertions are insufficient to state a claim for

retaliation; therefore, the Court will dismiss Plaintiff's retaliation claim against Dr. Kalinski.

### D. Civil Conspiracy

Plaintiff also purports to bring a claim for civil conspiracy against Defendant Kalinski. "To establish a civil conspiracy under § 1983, [Plaintiff] must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [Plaintiff's] deprivation of a constitutional right." Hinkle v. City of Clarksburg, W. Va., 81 F.3d 416, 421 (4th Cir. 1996). Plaintiffs are not required to produce direct evidence of a meeting of the minds, but they "must come forward with specific circumstantial evidence that each member of the alleged conspiracy share the same conspiratorial objective." Id. "[C]onclusory allegations of conspiracy do not state a claim for relief under § 1983[.]" Scinto v. Preston, 170 Fed. Appx. 834, 836 (4th Cir. 2006). For a conspiracy claim under Section 1983 to survive a motion to dismiss, "a plaintiff must allege both a mutual understanding to achieve some unconstitutional action reached by the . . . defendants and some factual assertions suggesting a meeting of the minds." Howard v. Food Lion, Inc., 232 F. Supp. 2d 585, 597 (M.D.N.C. 2002). "When a complaint contains merely a vague allegation of conspiracy, it cannot withstand a motion to dismiss." Id.

Here, Plaintiff fails to support his conclusory allegations that Defendants were conspiring with any specific facts. Plaintiff fails to allege there was meeting of the minds between Dr. Kalinski and Defendant Anderson and/or any of the medical or custody staff. Rather, Plaintiff merely alleges, in a conclusory manner, that Dr. Kalinski and Defendant Anderson conspired with the medical and custody staff to have his pain medications decreased. (Doc. No. 12-1 at 2). Plaintiff fails to state any more than conclusory allegations and naked assertions of a conspiracy, which are insufficient to plead a Section 1983 conspiracy claim. Therefore, this claim will be

dismissed.

## V.  CONCLUSION

For the reasons stated herein, Defendant Kalinski's motion to dismiss is granted as to all of Plaintiff's claims against her except for his Eighth Amendment claim against her in her individual capacity for deliberate indifference to serious medical needs.  Furthermore, as to Plaintiff's claim for damages in the form of injunctive relief related to Plaintiff's deliberate indifference claim, the Court will not dismiss that claim at this time.

**IT IS THEREFORE ORDERED THAT**:

Defendant Kalinski's Motion to Dismiss, (Doc. No. 30), is **GRANTED** in part and **DENIED** in part in accordance with this Order.

Signed: August 20, 2019

Frank D. Whitney
Chief United States District Judge

11