IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:18-CV-00047-MR

| | |
|---|---|
| ARTHUR JAY GOULETTE,<br><br>    Plaintiff,<br><br>v.<br><br>MARTA M. KALINSKI, et al.,<br><br>    Defendants. | **DEFENDANT<br>MARTA KALINSKI, M.D.'S RESPONSE<br>IN OPPOSITION TO PLAINTIFF'S<br>MOTION TO COMPEL (DE 69)** |

Defendant Marta M. Kalinski, M.D. ("Dr. Kalinski"), by and through counsel, respectfully submits this Response in Opposition to Plaintiff's Motion to Compel (DE 69).

## PERTINENT PROCEDURAL HISTORY

On March 4, 2014, this Court entered a Pretrial Order and Case Management Plan ("PTOCMP") setting the deadlines applicable in this case and limiting each party to twenty (20) interrogatories and twenty (20) requests for admission. (DE 52).

On March 17, 2020, Plaintiff served Plaintiff's First Requests for Interrogatories, Request for Production of Documents, and Request for Admission[1] ("Plaintiff's Served Discovery Requests"). (DE 66-1). On March 25, 2020, the Court received a document captioned Plaintiff's First Request for Interrogatories, Request for Production of Documents, and Request for Admission ("Plaintiff's Filed Discovery Requests"). (DE 60, 66-2). On April 3, 2020, the undersigned counsel mailed a letter to Plaintiff regarding his excessive[2] and duplicative discovery

---

[1] Dr. Kalinski answered the first twenty (20) interrogatories and the first twenty (20) requests for admission and objected to the remaining interrogatories and requests for admission consistent with *Mondragon v. Scott Farms, Inc.,* 329 F.R.D. 533, 541 (E.D.N.C. January 5, 2019). *See* Exhibit A.

[2] Plaintiff's discovery requests exceeded the number of interrogatories and requests for admission permitted by this Court's PTOCMP and the Federal Rules of Civil Procedure. *See* DE 52; Fed. R. Civ. Pro. 33(a)(1) (limiting each party to serve no more than 25 written interrogatories on any other party unless otherwise stipulated or ordered by the court); *see also* DE 66-1 (Plaintiff's Served Discovery Requests included forty-one (41) interrogatories and forty-five

1

requests[3]. (DE 66-3). On April 9, 2020, Plaintiff responded, indicating that he would not withdraw any of his discovery requests and enclosing an Affidavit asserting that twenty (20) interrogatories and twenty (20) requests for admission would be insufficient for him to prove his case, but offered no further rationale for this proposition. (DE 66-4).

On April 15, 2020, Plaintiff filed an Ex Parte Affidavit to Hon. Frank D. Whitney indicating twenty (20) interrogatories and twenty (20) requests for admission would not be sufficient to obtain the discovery he needs for his summary judgment motion and to oppose Dr. Kalinski's summary judgment motion. (DE 62). On May 11, 2020, Plaintiff filed a Motion to Extend the Discovery Deadlines, requesting an additional thirty (30) days to complete discovery. (DE 64). Plaintiff also filed another Ex Parte Affidavit to Hon. Frank D. Whitney and proposed order requesting additional interrogatories and requests for admission (DE 64-2, 64-3).

On May 14, 2020, Dr. Kalinski served her Response to Plaintiff's Served Discovery Requests ("Dr. Kalinski's Response") (*see* Exhibits A and B) and filed a Motion for Protective Order (DE 65), Appendix thereto (DE 66), and Memorandum in Support (DE 67) requesting the Court enter an Order protecting her from responding to interrogatories 21 through 39 and requests for admission 21 through 45 contained in Plaintiff's Served Discovery Requests and from responding to Plaintiff's Filed Discovery Requests in their entirety[4].

On May 27, 2020, the Court entered an Order in part granting and in part denying Dr. Kalinski's Motion for Protective Order and granting Plaintiff's Motion for Extension of Time.

---

(45) requests for admission), DE 66-2 (Plaintiff's Filed Discovery Requests contained thirty-six (36) interrogatories and forty-five (45) requests for admission.
[3] Plaintiff's Served Discovery Requests and Plaintiff's Filed Discovery Requests were substantially similar, but not identical. *Compare* DE 66-1 *with* DE 66-2.
[4] Though the Certificate of Service attached to Dr. Kalinski's Response indicates it was served to Plaintiff at Central Prison, that was an inadvertent error and Dr. Kalinski's Response was, in fact, served on him at Mountain View, as shown by the service letter. *See* Exhibits A and B. An Amended Certificate of Service was subsequently served. *See* Exhibit G.

(DE 68).  The Court concluded that Dr. Kalinski "shall not be required to respond to the outstanding discovery requests in excess of that allowed by the PTOCMP" and that she "has satisfied the outstanding requests".  *Id.* at 4.

Dr. Kalinski, through the undersigned counsel, received a letter from Plaintiff dated May 20, 2020, just six (6) days after service of Dr. Kalinski's Response, regarding alleged deficiencies contained in the discovery responses.  *See* Exhibit C[5].  Dr. Kalinski, through the undersigned counsel, received another letter from Plaintiff dated May 28, 2020.  *See* Exhibit D[6].  On June 5, 2020, Dr. Kalinski, through the undersigned counsel responded to Plaintiff's letters dated May 20, 2020 and May 28, 2020.  *See* Exhibit E.  Dr. Kalinski addressed the issues raised by Plaintiff in his letters and enclosed her First Supplemental Response to Plaintiff's Request for Production of Documents ("Dr. Kalinski's Supplemental Response").  *See* Exhibit F.

On June 9, 2020, Plaintiff filed a Motion to Compel (DE 69), two Declarations in Support (DE 69-1, 69-3), a Brief in Support (DE 69-2), Exhibits (DE 69-5), and a Proposed Order (DE 69-4).  Dr. Kalinski now responds to in opposition to Plaintiff's Motion to Compel.

**RESPONSE**

I. **PLAINTIFF'S ALLEGATIONS THAT DR. KALINSKI HAS NOT MADE A GOOD FAITH EFFORT TO RESOLVE THE DISCOVERY DISPUTE IS INACCURATE**

First, contrary to Plaintiff's assertion that Dr. Kalinski did not respond to Plaintiff's deficiency letters, Dr. Kalinski responded with a letter and Supplemental Discovery Response on June 5, 2020.  *See* DE 69-1 ¶¶ 14, 17, DE 69-3; Exhibits E and F.  Dr. Kalinski's June 5, 2020 letter addresses Plaintiff's requests for supplementation and included Dr. Kalinski's Supplemental

---

[5] Plaintiff attached a substantially similar letter to his Motion to Compel.  *See* DE 69-5 at 43-44.  The undersigned counsel did not receive a copy of letter filed with the Court as Exhibit 2 to Plaintiff's Motion to Compel.
[6] Plaintiff attached a substantially similar letter to his Motion to Compel.  *See* DE 69-5 at 45-47.  The undersigned counsel did not receive a copy of letter filed with the Court as Exhibit 2 to Plaintiff's Motion to Compel.

3

Response, including production of additional North Carolina Department of Public Safety ("NCDPS") policies that were in effect during the time period at issue, May 6, 2016 through May 24, 2018, and relevant to the medical issues that are the subject of this lawsuit. *See* Exhibits E and F.

Second, Plaintiff asserts he has attempted to contact the undersigned counsel via telephone in his Declarations in Support of his Motion to Compel. *See* DE 69-1 ¶¶ 15, 18; DE 69-3. However, the undersigned counsel have not received any phone calls or voice messages from Plaintiff.

## II. PLAINTIFF'S ALLEGATION THAT DEFENSE COUNSEL DELAYED PRODUCTION OF DR. KALINSKI'S RESPONSE BY SERVING IT AT CENTRAL PRISON IS INACCURATE

Regarding Plaintiff's allegation that defense counsel served Dr. Kalinski's Response to the wrong address, that is allegation is incorrect. (DE 69 at 3, Exhibit D at 3). Dr. Kalinski's Response was served on Plaintiff on May 14, 2020 and was addressed to Plaintiff at Mountain View Correctional Institution, 545 Amity Park Rd., Spruce Pine, NC 28777. *See* Exhibit B. Dr. Kalinski's Response to Plaintiff's Served Discovery Requests was enclosed with her Motion for Protective Order, Appendix thereto, and Memorandum in Support. *Id.* The Central Prison address listed on the Certificate of Service attached to Dr. Kalinski's Response to Plaintiff's Served Discovery Requests was an inadvertent error. *See* Exhibit B at 43. An Amended Certificate of Service was enclosed with Dr. Kalinski's June 5, 2020 letter. *See* Exhibit G.

In spite of Plaintiff's allegation that counsel served Dr. Kalinski's Response at Central Prison to delay, Plaintiff clearly received Dr. Kalinski's Response to Plaintiff's Served Discovery Requests without delay as he was able to send two letters regarding the alleged deficiencies of Dr.

4

Kalinski's Response, the first of which is dated just six (6) days after the Dr. Kalinski served her Response.  *See* Exhibits B, C, and D.

### III. DR. KALINSKI ADEQUATELY ANSWERED INTERROGATORIES NO. 4 AND 5

Plaintiff's contends Dr. Kalinski's response to Interrogatory No. 4 was inaccurate, incomplete, and/or a lie. *See* DE 69-1 ¶ 3; DE 69-2 at 3 ¶ A.  Plaintiff asserts Dr. Kalinski could not have diagnosed him with any injury because she never examined him. *Id*.  Plaintiff also states Dr. Kalinski was aware of his locked left index finger, as evidenced by Dr. Kalinski's order to discontinue occupational therapy prescribed by another provider for the same. *Id.*, DE 69-5 at 48-49.  Plaintiff also asserts Dr. Kalinski did not respond to Interrogatory No. 5. *See* DE 69-1 ¶ 4, DE 69-2 at 3 ¶ B.

In interrogatories 4 and 5, Plaintiff requested Dr. Kalinski describe in detail any diagnosis of which she was aware regarding the injuries giving rise to this lawsuit and a medical explanation of each diagnosis, including the cause, symptoms, treatment, and prognosis. *See* Exhibit A Interrogs. 4-5.  Dr. Kalinski objected to these requests as overly broad and unduly burdensome in that they sought the discovery of information outside of the time period at issue, regarding health care provided to Plaintiff and events/diagnoses that occurred when Dr. Kalinski was not present and of which she has no personal knowledge, and a narrative explanation of more than two years of medical care provided to Plaintiff by multiple health care providers at two facilities. *Id.*  During the time period at issue, Dr. Kalinski did not personally examine Plaintiff, however, she performed numerous chart reviews as evidenced by the medical records produced to Plaintiff, bates stamped KALINSKI 000001-002227.  During her reviews of Plaintiff's chart, she formed differential diagnoses, if necessary, and prescribed appropriate treatment and recommendations.

5

Dr. Kalinski does not dispute that at some point during the time period at issue she became aware that another provider diagnosed Plaintiff with a hand injury and recommended occupational therapy, which she subsequently discontinued as occupational therapy is not available at Alexander Correctional Facility, the facility at which Dr. Kalinski rendered care to Plaintiff. The diagnoses indicated in Dr. Kalinski's Answer to interrogatory No. 4 are those that she made and that are based on her personal knowledge gained during her review of Plaintiff's chart and based on her training, experience, and medical judgment. Dr. Kalinski also produced over two-thousand pages of Plaintiff's medical records from the time period at issue, which reflect other diagnoses made by other health care providers at times Dr. Kalinski was not present and of which she has no knowledge.

In response to interrogatory No. 5, Dr. Kalinski referred Plaintiff to her response to interrogatory No. 4. It is unduly broad and overly burdensome to request Dr. Kalinski to provide a narrative explanation of over two years of medical care and explain potential symptoms a patient could be exhibiting, the potential treatments that could be used to address such symptoms, and potential prognoses. The treatment of medical issues of inmates incarcerated within the NCDPS requires an individual determination and recommendation on a case-by-case basis based upon the treating provider's training and experience, examination, evaluation, and/or chart review of the inmate's condition, the inmate's subjective complaints, and/or the objective findings of any diagnostic tests. Depending on the inmate, a health care provider may obtain a medical history and history of present illness based on the patient's reported symptoms. The prognosis and treatment depends on the particular patient.

## IV. DR. KALINSKI PRODUCED RESPONSIVE AND RELEVANT DOCUMENTS THAT ARE WITHIN HER POSSESSION CUSTODY AND CONTROL

Plaintiff's contends that Dr. Kalinski's objections on the grounds that the discovery sought is irrelevant, burdensome, not in Dr. Kalinski's possession, custody, and/or control, and privileged have no merits and are frivolous is unsupported. *See* DE 69-1 ¶ 19; DE 69-2 at 2. First, Plaintiff generally asserts the discovery he seeks is not subject to the attorney-client privilege. *See* DE 69-2 at 6. Dr. Kalinski has not withheld any documents on the grounds of attorney-client privilege, but rather has preserved her objection. Plaintiff further asserts that all of the evidence he has sought is highly relevant. (DE 69-2 at 6). However, the subject of this lawsuit is whether Dr. Kalinski was deliberately indifferent to Plaintiff's medical needs while he was incarcerated at Alexander during the time period of May 6, 2016 through May 24, 2018. *See* DE 12. Health care rendered by other providers outside of the time period identified by Plaintiff is not relevant to that determination.

### A. Dr. Kalinski Produced Plaintiff's Medical Records From The Applicable Time Period and Records Outside The Applicable Time Period Are Irrelevant To The Subject Of This Lawsuit

Plaintiff contends that Dr. Kalinski did not provide Plaintiff with documents in response to his Request for Production No. 7, which seeks the results of a CT scan of Plaintiff's neck and back conducted in 2013. *See* DE 69-1 ¶ 9; DE 69-2 at 4, ¶ G; *see also* Exhibit A RPD 7. Plaintiff similarly contends that Dr. Kalinski did not adequately provide Plaintiff with documents in response to his Request for Production No. 9, which seeks the production of all x-rays taken from 2012 through present. *See* DE 69-1 ¶ 10, DE 69-2 at 4, ¶ H; *see also* Exhibit A RPD 9. Plaintiff further contends that Dr. Kalinski refused provide Plaintiff with all of his medical records dating back to 2012 as requested in Request for Production No. 15. *See* DE 69-1 ¶ 13; DE 69-2 at 5, ¶ K; *see also* Exhibit A RPD 15.

7

Case 5:18-cv-00047-MR   Document 70   Filed 06/18/20   Page 7 of 14

The records Plaintiff seeks in these requests for production of documents are outside of the time period at issue, May 6, 2016 through May 24, 2018. This is a § 1983 deliberate indifference action and the allegations pertaining to Dr. Kalinski relate to the adequacy of medical treatment provided at Alexander Correctional Institution from May 6, 2016 through May 24, 2018. *See* DE 12. Medical records dating back to 2012 are not relevant to the allegations that Dr. Kalinski was deliberately indifferent to Plaintiff's serious medical need during the applicable time period. Dr. Kalinski produced over two-thousand (2,000) pages of medical records to Plaintiff, which are bates stamped KALINSKI 000001-002227. Any radiology reports generated during the time period at issue were included. Furthermore, Dr. Kalinski is not in possession of any radiology films. Prison records are maintained under the control and direction of the Secretary of Public Safety pursuant to N.C. Gen. Stat. § 148-74. Dr. Kalinski is not in possession, custody, and/or control of a complete copy of Plaintiff's medical records from the NCDPS or health care providers outside the NCDPS.

### B. Dr. Kalinski Produced Relevant Records That Are In Her Possession, Custody, And Control

Plaintiff contends that Dr. Kalinski did not adequately or correctly respond to Request for Production No. 2, which seeks copies of all writings between May 2016 and present regarding Plaintiff's medical issues, including responses and materials used to formulate those responses. *See* DE 69-1 ¶ 6, DE 69-2 at 3-4, ¶ D; *see also* Exhibit A RPD 2. Plaintiff specifically seeks any and all correspondence, including notes and/or emails related to his medical care and/or treatment. DE 69-1 ¶ 6, DE 69-2 at 3-4, ¶ D. Dr. Kalinski produced Plaintiff's medical records (KALINSKI 000001-00227), NCDPS Inmate Grievance Resolution Board Records (KALINSKI 002228-002354), and Incident Reports (KALINSKI 002378-002383) from the time period at issue, May 6, 2016 through May 24, 2018, related to the allegations asserted in the Amended Complaint. Dr. Kalinski does not have additional documents in her possession, custody, and/or control that are

responsive to this request. Furthermore, Dr. Kalinski is no longer employed by the North Carolina Department of Public Safety ("NCDPS").

Plaintiff also contends that Dr. Kalinski did not adequately or correctly respond to Request for Production No. 3, which seeks all policies, procedures, and standard operating procedures in effect from May 2016 through present regarding assessing the medical needs of inmates at Alexander. *See* DE 69-1 ¶ 7, DE 69-2 at 4, ¶ E; *see also* Exhibit A RPD 3. Similarly, Plaintiff contends that Dr. Kalinski did not adequately provide Plaintiff with documents in response to his Request for Production No. 10, which requests training manuals and/or course syllabi of any courses related to approval of medical devices, sick call procedures, approval/denial of outside medical treatment, utilization review procedures, and healthcare treatment of offenders. *See* DE 69-1 ¶ 11, DE 69-2 at 4-5, ¶ I; *see also* Exhibit A RPD 10. Dr. Kalinski referred Plaintiff to the NCDPS Health Care Policy Manual, which Plaintiff contends is an inadequate production. *See* DE 69-2 at 4, ¶ E.

Dr. Kalinski is not in possession, custody, and/or control of all policies, procedures, and/or standard operating procedures that were in effect during the applicable time period. Likewise, Dr. Kalinski is not in possession, custody, and/or control of additional training manuals or course syllabi to the extent that such documents may exist and/or are maintained by the NCDPS. Dr. Kalinski is no longer employed with the NCDPS and only has access to the current NCDPS Health Care Policy Manual, which is publically available at https://www.doc.state.nc.us/div/Prisons_Health-Care-Manual.htm. It is extensive and many policies contained therein are not relevant to the allegations asserted in this cause of action. Dr. Kalinski produced the Sick Call Policy, Specialty Medical Clinics Policy, and Utilization Management Policy, bates stamped KALINSKI 002355-002377. *See* Exhibit A. Further, she

9

supplemented her response to this request with policies the Clinical Practice Guidelines regarding Back Pain and Chronic Pain, bates stamped KALINSKI 002384-002405.  *See* Exhibit F.

Plaintiff further contends that Dr. Kalinski did not provide Plaintiff with documents in response to his Request for Production No. 5, which requests all NCDPS records and/or email correspondence made regarding Plaintiff's medical care.  *See* DE 69-1 ¶ 8, DE 69-2 at 4, ¶ F; *see also* Exhibit A RPD 5.  Plaintiff specifically requests any and all correspondence, records, and/or emails.  DE 69-2 at 4, ¶ F.  Dr. Kalinski referred Plaintiff to his medical records, May 6, 2016 through May 24, 2018, which are bates stamped KALINSKI 000001-002227, and contain Dr. Kalinski's only notes regarding Plaintiff's medical care.  Dr. Kalinski is not in possession of any additional NCDPS records or email correspondence regarding Plaintiff's medical care during the time period at issue.

Plaintiff also contends that Dr. Kalinski refused to provide Plaintiff with documents in response to his Request for Production No. 14, which seeks copies of files created and/or maintained on Dr. Kalinski, including "Tap files", disciplinary files, and training files.  *See* DE 69-1 ¶ 12, DE 69-2 at 5, ¶ J; *see also* Exhibit A RPD 14.  Plaintiff indicates he does not seek personal records "in a general way", but rather seeks information pertaining to his medical care and complaints about Dr. Kalinski.  DE 69-2 at 6.  To the extent that such documents exist and may be maintained by the NCDPS, Dr. Kalinski is not in possession, custody, and/or control of any of the documents requested.  Upon information and belief, Dr. Kalinski does not have a NCDPS "disciplinary file" as she was never disciplined by the NCDPS.  Further, this is a § 1983 deliberate indifference action and the allegations pertaining to Dr. Kalinski relate to the adequacy of medical treatment provided at Alexander Correctional Institution from May 6, 2016 through

May 24, 2018.  *See* DE 12.  The information sought regarding Dr. Kalinski is not reasonably calculated to lead to the discovery of admissible evidence.

Plaintiff correctly asserts that Courts have held that documents are deemed to be within the possession, custody or control of a party upon whom a request is served if the party has actual possession, custody, or control, including the legal right and practical ability to obtain the documents requested.  *See Tomilon v. El Paso Corp.,* 245 F.R.D. 474, 476-77 (D. Colo. 2007). "The party seeking production of the documents bears the burden of proving that the opposing party has the control required under Rule 34(a)." *Id.*  In this case, Dr. Kalinski is no longer employed by the NCDPS.

### C. Dr. Kalinski Completely Responded to Plaintiff's Other Request For Production

Plaintiff contends Dr. Kalinski did not adequately respond to Request for Production No. 1, which seeks all documents cited, relied upon, or to which reference was made in response to the interrogatories.  *See* DE 69-1 ¶ 5, DE 69-2 at 3 ¶ C; *see also* Exhibit A RPD 1.  Plaintiff specifically seeks supplementation in the form of any emails or other kind of correspondence.  *See* DE 69-1 ¶ 5, DE 69-2 at 3 ¶ C.  Dr. Kalinski identified and produced Plaintiff's medical records from the applicable period of time, May 6, 2016 through May 24, 2018, bates stamped KALINSKI 000001-002227 and the NCDPS Health Services Policy and Procedure Manual regarding Utilization Management Policies, bates stamped KALINSKI 002360-002377.  Dr. Kalinski did not rely on or refer to any other documents in answering Plaintiff's interrogatories.  No emails or other correspondence are responsive to this request.  To the extent Plaintiff seeks the production of emails or correspondence between counsel and Dr. Kalinski in responding to the interrogatories, such communication is protected by the attorney-client privilege and work product doctrine.

## V. DR. KALINSKI ADEQUATELY RESPONDED TO PLAINTIFF'S REQUESTS FOR ADMISSION

Plaintiff contends that Dr. Kalinski did not adequately admit or deny Requests for Admission Nos. 1-2, 4- 5, 7, 10-12, and 15-19, and that she is lying. *See* DE 69-1 ¶ 20; DE 69-2 at 5, ¶ L. However, Dr. Kalinski responded pursuant to Rule 36 of the Federal Rules of Civil Procedure. *See* Exhibit A at 29-34. Rule 36(a)(4) provides "when good faith requires a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." Fed. R. Civ. P. Rule 36. Further, an "answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonably inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." *Id.* Dr. Kalinski admitted, denied, or indicated she did not have sufficient knowledge or information with which to admit or deny the request after reasonably inquiry into the information available to her in response to each of the first twenty (20) requests for admission as required by the PTOCMP. *See* DE 52. Where she was unable to admit or deny the request, she qualified her answer with specificity, admitted the portion of the request that was true, and denied the remainder of the request.

Regarding Plaintiff's allegation that Dr. Kalinski lied in her responses to Request for Admission No. 7 (*see* Exhibit D), Dr. Kalinski objected to the request as confusing and overly board and denied the request based upon her information and belief. She does not have personal knowledge of the extent of the damage, if any, to Plaintiff's neck and back. Plaintiff also contends that Dr. Kalinski lied in her response to Request for Admission No. 16. *See* Exhibit D. However, Dr. Kalinski was not the provider who discontinued Plaintiff's prescription for Tramadol during the applicable time period, but to the contrary, Dr. Kalinski renewed Plaintiff's order for Tramadol on at least two occasions.

## CONCLUSION

Based on the foregoing, Dr. Kalinski respectfully requests that the Court deny Plaintiff's Motion to Compel and grant her any other further relief the Court deems proper and just.

Respectfully submitted,

This 18th day of June, 2020.

                      YOUNG MOORE AND HENDERSON, P.A.

By: /s/ Madeleine M. Pfefferle
     Elizabeth P. McCullough
     N.C. State Bar # 32301
     Madeleine M. Pfefferle
     N.C. State Bar # 50932
     *Attorneys for Defendant Marta Kalinski, M.D.*
     P.O. Box 31627
     Raleigh, North Carolina 27622
     Telephone: (919) 782-6860
     Fax: (919) 782-6753
     E-mail:  Elizabeth.McCullough@youngmoorelaw.com
                   Madeleine.Pfefferle@youngmoorelaw.com

## CERTIFICATE OF SERVICE

   I hereby certify that on the 18th day of June, 2020, I electronically filed the forgoing document with the Clerk of the Court using the CM/ECF system and I mailed said document to the following non-CM/ECF participant:

Arthur Jay Goulette, *pro se*
0613903
Mountain View Correctional Institution
545 Amity Park Rd.
Spruce Pine, NC 28777

        YOUNG MOORE AND HENDERSON, P.A.

  By: /s/ Madeleine M. Pfefferle
     Elizabeth P. McCullough
     N.C. State Bar # 32301
     Madeleine M. Pfefferle
     N.C. State Bar # 50932
     *Attorneys for Defendant Marta Kalinski, M.D.*
     P.O. Box 31627
     Raleigh, North Carolina 27622
     Telephone: (919) 782-6860
     Fax: (919) 782-6753
     E-mail: Elizabeth.McCullough@youngmoorelaw.com
          Madeleine.Pfefferle@youngmoorelaw.com

199-1439/5009025